**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** | **MDL NO. 16-2738 (FLW) (LHG)** **JUDGE FREDA L. WOLFSON** **MAG. JUDGE LOIS H. GOODMAN** |
| ARCHIE WELLMAN, AS ANTICIPATED PERSONAL REPRESENTATIVE OF THE ESTATE OF CATHERINE WELLMAN, DECEASED, | COMPLAINT AND JURY DEMAND Civil Action No.: 3:21-cv-11888 |
| Plaintiff, | |
| v. | DIRECT FILED ACTION |
| IMERYS TALC AMERICA, INC. F/K/A LUZENAC AMERICA, INC., AND PTI UNION, LLC D/B/A PHARMA TECH INDUSTRIES, | |
| Defendants. | |

**ADDITIONAL COUNTS TO PLAINTIFF'S SHORT FORM COMPLAINT**

1.      Defendant PTI Union, LLC is a Delaware Limited Liability Company. Defendant PTI Union, LLC's members include one or more residents and citizens of the State of Missouri, such that Defendant PTI Union, LLC is a citizen of Missouri.

2.      At all relevant times, Defendant PTI Union, LLC has been in the business of processing, bottling, labeling, packaging, and/or distributing talcum powder-based products, including Johnson & Johnson's Baby Powder and Shower to Shower (hereinafter referred to as "PRODUCTS").

3.      At all relevant times, Defendant PTI Union, LLC was acting at the direction of or on behalf of the Johnson & Johnson, Imerys Talc, in carrying out a common plan, scheme, or conspiracy, acting within the course & scope of its employment or agency.

1

## ALLEGATIONS COMMON TO ALL COUNTS

4.      Talc is a magnesium trisilicate that is mined from the earth.  It is an inorganic mineral.

5.      The PRODUCTS are composed almost entirely of talc.

6.      At all relevant times, a feasible alternative to the PRODUCTS has existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with no known health effects.  Cornstarch powders have been sold and marketed for the same uses with nearly the same effectiveness as the PRODUCTS.

7.      At all relevant times, the talc used in the PRODUCTS was sourced by Imerys Talc America[1] ("Imerys") as well as by Defendant Cyprus from mines.

8.      At all relevant times, Johnson & Johnson were engaged in the business of manufacturing, marketing, testing, packaging, labeling, promoting, selling, and/or distributing the PRODUCTS. Johnson & Johnson outsourced many of these functions, including but not limited to the manufacturing, testing, packaging and labeling of the PRODUCTS, to their agent Defendant PTI Union, who performed these functions at the Johnson & Johnsons' direction. The Johnson & Johnson and their agent Defendant PTI Union manufactured the PRODUCTS with talc that was mined and supplied to them by Imerys and Cyprus.

9.      Historically, "Johnson's Baby Powder" has been advertised and promoted as a symbol of "freshness" and "comfort," eliminating  friction on the skin, absorbing "excess wetness" to keep skin feeling dry and comfortable, and "clinically proven gentle and mild."

---

[1] All allegations regarding actions taken by Imerys Talc also include actions taken while that entity was known as Luzenac America, Inc.

During the time in question, Johnson & Johnson advertised and marketed the PRODUCTS, inducing women through advertisements to dust themselves with this product to mask odors. The Johnson's Baby Powder bottle specifically targets women, stating: "For you, use every day to help feel soft, fresh, and comfortable."  At all relevant times, Johnson & Johnson did not disclose any potential risks or health hazards associated with the PRODUCTS to the consuming  public.

10.     At all relevant times, Johnson & Johnson advertised and marketed  their "Shower to Shower" product as safe for use by women as evidenced in its slogan, "A  sprinkle a day keeps odor away," and through advertisements such as: "Your body perspires in  more places than just under your arms.  Use SHOWER to SHOWER to feel dry, fresh, and  comfortable throughout the day;" and "SHOWER to SHOWER can be used all over your body."   The website owned, maintained, and operated by Johnson & Johnson includes    the suggested use of the product "Shower to Shower" in the genital area with the following:   "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction.   Apply after a bikini wax to help reduce irritation and discomfort."[3]

11.     In reliance on the PRODUCTS' advertising, marketing, and promotion, the Plaintiff used the PRODUCTS to dust their perineums for feminine hygiene  purposes. This was an intended and foreseeable use of the PRODUCTS based on the advertising,  marketing, and labeling of the PRODUCTS.

12.     Upon information and belief, in or about 1971, a study was conducted by Dr. WJ Henderson and others in Cardiff, Wales, which found an association between talc and ovarian cancer.

13.     Upon information and belief, in or about 1982, an epidemiologic study was performed on talc powder use in the female genital area.  That study was conducted by Dr. Daniel

Cramer and others.  This study found a ninety-two percent increased risk of ovarian  cancer with women who reported genital talc use.

14.     Upon information and belief, since approximately 1982, numerous additional epidemiologic studies have been conducted, which provide data regarding the association of talc and ovarian cancer, reporting an elevated risk of ovarian cancer associated with genital talc use in women.

15.     Upon information and belief, in or about 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestos form talc and found clear evidence of carcinogenic activity.  Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.

16.     Upon information and belief, in response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA), now known as the PCPC, formed the Talc Interested Party Task Force (TIPTF). Johnson & Johnson, Inc., Johnson & Johnson Consumer Incorporated, and Luzenac—now known as Imerys  Talc— were members of the CTFA and involved in TIPTF. The stated purpose of TIPTF was to  pool financial resources in order to collectively defend talc use at all costs and to prevent  regulation of this industry.  TIPTF hired scientists to perform biased research regarding the  safety of talc. TIPTF members, including Johnson & Johnson and Luzenac, then edited these  scientific reports before they were submitted to governmental agencies. In addition, members of  TIPTF knowingly released false information about the safety of talc to the consuming public and used political and economic influence on regulatory bodies.  These activities were conducted by  these companies and organizations, including Johnson & Johnson and Luzenac, over the past  four decades in an effort to prevent regulation of talc and to mislead the consuming public about  the true hazards

of talc.

17.     Upon information and belief, on or about November 19, 1994, the Cancer Prevention Coalition sent a letter to Ralph Larsen, then-CEO of Johnson & Johnson, urging him to substitute cornstarch for talcum powder PRODUCTS and to label its PRODUCTS with a warning on  cancer risks.[5]

18.     Upon information and belief, in or about 1996, the FDA requested that the condom industry stop dusting condoms with talc due to the health concerns that studies linked talc to ovarian cancer.  Upon this request, all U.S. manufacturers discontinued the use of talc in its condom manufacturing process to reduce the potential health hazards to women.[6]

19.     Upon information and belief, in or about 1990, the U.S. Food and Drug Administration (FDA) asked manufacturers to voluntarily stop putting talc on surgical gloves because mounting scientific evidence showed that it caused adhesions in surgical patients.[7]

20.     Upon information and belief, in or about February 2006, the International Agency  for Research on Cancer (IARC), the specialized cancer agency of the World Health Organization, published a paper that classified perineal use of talc-based body powder as a "Group 2B" human carcinogen.  IARC, which is well-regarded as an international authority on cancer research, concluded that studies from around the world consistently found an increased risk of ovarian cancer in women who used talc in perineal areas.  IARC determined that between 16 to 52 percent of women worldwide used talc to dust their perineum and found an increased risk of ovarian cancer in women talc users ranging from 30 to 60 percent.

21.     Upon information and belief, in or about 2006, the Canadian government, under The Hazardous PRODUCTS Act and associated Controlled PRODUCTS Regulations, classified talc as a   "D2A," "very toxic," "cancer-causing" substance under its Workplace Hazardous

Materials  Information System (WHMIS).  Asbestos is also classified as "D2A."

22.     Upon information and belief, in or about 2006, Imerys Talc began  placing a warning on the MSDS it provided to Johnson & Johnson, Defendant PTI Union, LLC, for talc, which were supposed to convey adequate health and warning information to its customers.

23.     Starting in 2006, the MSDS supplied by Imerys expressly warned those receiving the talc, including the Johnson & Johnson, and Defendant PTI Union, of the ovarian cancer hazard associated with perinteal talc use, an intended use of the PRODUCTS. The MSDS not only provided the warning  information about the IARC classification but also included warning information regarding   "States Rights to Know" and warning information about the Canadian Government's D2A  classification of talc.

24.     Defendant PTI Union, LLC committed active, tortious conduct in receiving said shipments of talc from Imerys, accompanied by the express ovarian cancer warning provided for in the MSDS, only for PTI Union, LLC to disregard the warning, and process, bottle, mislabel, mispackage, and distribute, without warning, the PRODUCTS out of its facility, thereby creating the dangerous condition of the product in whole or in part.

25.     Defendant PTI Union, LLC manufactured, processed, bottled, mislabeled, and mispackaged the PRODUCTS at its Union, Missouri manufacturing facility and/or controlled and directed the manufacturing, processing, bottling, mislabeling, and mispackaging at other manufacturing facilities outside of Missouri from its Union, Missouri manufacturing facility, by and through its officers, agents, and members in Missouri.

26.     Defendants engaged in relevant acts together with Defendant PTI Union, LLC in Missouri and/or Defendants are derivatively liable for Defendant PTI Union, LLC's conduct in Missouri.

27.     In 2008, the Cancer Prevention Coalition submitted a "Petition Seeking a Cancer Warning on Cosmetic Talc PRODUCTS" to the FDA.  The petition requested that the FDA immediately require cosmetic talcum powder PRODUCTS to bear labels with a prominent warning  that frequent talc application in the female genital area is responsible for major risks of ovarian  cancer.

28.     In 2013, Cancer Prevention Research published a study that showed that women who used talcum powder in their groin area had a 20 to 30 percent greater risk of developing ovarian cancer than women who did not use talc PRODUCTS in that area.[10]

29.     Presently, the National Cancer Institute[11] and the American Cancer Society list genital talc use as a "risk factor" for ovarian cancer.

30.     The Gilda Radner Familial Ovarian Cancer Registry, Roswell Park Center Institute, and the Department of Gynecologic Oncology University of Vermont publish a pamphlet entitled, "Myths & Facts about ovarian cancer: What you need to know." In this pamphlet, under "known" risk factors for ovarian cancer, it lists: "Use of Talc (Baby Powder) in the Genital Area."[13]

### FEDERAL STANDARDS AND REQUIREMENTS

31.     Plaintiff incorporates by reference all other paragraphs of this Short Form Complaint and those allegations in *Plaintiffs' Master Long Form  Complaint* in *In re: Talcum Powder Products Marketing, Sales Practices, and Products  Liability Litigation*.

32.      At all relevant times, Defendants had the obligation to comply with federal standards and regulations in the manufacture, design, marketing, branding, labeling, distribution, and sale of the PRODUCTS.

33.     Defendants, each individually, *in solido*, and/or jointly,  violated the Federal

Food,  Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.,* Defendants have or may have failed to comply with federal standards and  requirements governing the manufacture, design, marketing, branding, and sale of the  PRODUCTS including, but not limited to, the following violations of sections and subsections of  the United States Code and the Code of Federal Regulations:

a.   The PRODUCTS are adulterated in violation of 21 U.S.C. § 361 because,  among other things, they contain a poisonous or deleterious substance which  may render them injurious to users under the conditions of use prescribed in  the labeling thereof, or under such conditions of use as are customary or usual.

b.   The PRODUCTS are misbranded in violation of 21 U.S.C. § 362 because,  among other things, their labeling is false or misleading.

c.   The PRODUCTS are misbranded in violation 21 U.S.C. § 362 because words,  statements, or other information required by or under authority of 21 U.S.C. §  362 are not prominently placed thereon with such conspicuousness and in  such terms as to render them likely to be read and understood by the ordinary  individual under customary conditions of purchase and use.

d.   The PRODUCTS are misbranded in violation of 21 C.F.R. § 701.1 because  they contain false or misleading representations that they are safe for daily  application to all parts of the female body.

e.   The PRODUCTS do not bear a warning statement, in violation of 21 C.F.R. §  740.1, to prevent a health hazard that may be associated with the  PRODUCTS, namely that the PRODUCTS may cause ovarian cancer or a  heightened risk of ovarian cancer when applied to the perineal area.

f.   The  PRODUCTS  do  not  prominently  and  conspicuously  bear  a  warning

statement, in violation of 21 C.F.R. § 740.2, as to the risk of ovarian cancer caused by the use of the PRODUCTS when applied to the perineal area, in such terms and design that it is likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

g.  The PRODUCTS, in violation of 21 C.F.R. § 740.10, do not conspicuously state on their principal display panel that the safety of the PRODUCTS have not been determined and/or that the safety of the PRODUCTS' principal ingredients have not been determined.

## COUNT TWENTY-FOUR – STRICT LIABILITY FOR FAILURE TO WARN (PTI Union, LLC)

34.  Plaintiff incorporates by reference all other paragraphs of this Short Form Complaint and those allegations in *Plaintiffs' Master Long Form Complaint* in *In re: Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*.

35.  At all relevant times, Defendant PTI Union, LLC was engaged in the business of processing, manufacturing, testing, bottling, mislabeling, mispackaging, and/or distributing, and otherwise introducing into the stream of interstate commerce, the PRODUCTS.

36.  At all relevant times, Defendant PTI Union, LLC knew or should have known that the use of the PRODUCTS in the female perineal area significantly increased the risk of ovarian cancer in women based upon scientific knowledge dating back until at least 1971.

37.  At all relevant times, the PRODUCTS, processed, manufactured, tested, bottled, mislabeled, misbranded, and/or distributed by Defendant PTI Union, LLC, were defective and unreasonably dangerous because, despite Defendant PTI Union, LLC's knowledge that its PRODUCTS were carcinogenic and could lead to an increased risk of ovarian cancer when applied

to the female perineal area, a reasonably foreseeable use of the PRODUCTS, Defendant PTI Union failed to provide adequate warning or instruction to consumers, including Plaintiff, regarding the increased risk of ovarian cancer when the PRODUCTS are applied to the female perineal area.

38.     At all relevant times, Plaintiff used the PRODUCTS to powder her perineal areas, a use that was reasonably foreseeable and for which the PRODUCTS were supplied.

39.     Had Plaintiff received warning and/or instruction from Defendant PTI Union, LLC regarding the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, Plaintiff would not have used the PRODUCTS in this manner.

40.     Due to the absence of any warning or instruction by Defendant PTI Union, LLC as to the significant health and safety risks posed by the PRODUCTS as described herein, Plaintiff was unaware that the PRODUCTS created an increased risk of ovarian cancer, as this danger was not known to the general public.

41.     As a direct and proximate result of Defendant PTI Union, LLC's failure to warn Plaintiff of the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, despite their actual knowledge of this material fact, Plaintiff developed ovarian cancer and have been injured catastrophically and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages.

WHEREFORE, Plaintiff prayss for judgment against Defendant PTI Union, LLC in a fair and reasonable sum in excess of $75,000.00 together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT TWENTY-FIVE – STRICT LIABILITY FOR DEFECTIVE MANUFACTURE  AND DESIGN

42.     Plaintiff incorporates by reference all other paragraphs of this Short Form Complaint and those allegations in *Plaintiffs' Master Long Form  Complaint* in *In re: Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*.

43.     At all relevant times, the Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing the PRODUCTS into the stream of interstate commerce, which they sold and distributed throughout the United States.

44.     At all relevant times, the PRODUCTS were expected to and did reach Plaintiff without a substantial change in condition.

45.     At all relevant times, the PRODUCTS were defectively and improperly manufactured and designed by the Defendants in that, when the PRODUCTS left the hands of the Defendants the foreseeable risks of the PRODUCTS far outweighed the benefits associated with their design and formulation.

46.     At all relevant times, the PRODUCTS were defectively manufactured and designed by the Defendants in that their design and formulation is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

47.     At all relevant times, the PRODUCTS created significant risks to the health and safety of consumers that far outweigh the risks posed by other products on the market used for the same therapeutic purpose.

48.     At all relevant times, a reasonable and safer alternative design existed, which could have feasibly been employed by the Defendants to manufacture a product with the same therapeutic purpose as the PRODUCTS.  Despite knowledge of this reasonable and safer alternative design, the Defendants failed to alter the PRODUCTS' design and formulation.  The

magnitude of the danger created by the PRODUCTS far outweighs the costs associated with using an alternative, safer design.

49.     As a direct and proximate result of the defective design and manufacture of the PRODUCTS, Plaintiff developed ovarian cancer and have been injured catastrophically and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages.

WHEREFORE, Plaintiff prays for judgment against the Defendants in a fair and reasonable sum in excess of $75,000.00 together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT TWENTY-SIX –NEGLIGENCE

50.     Plaintiff incorporates by reference all other paragraphs of this Short Form Complaint and those allegations in *Plaintiffs' Master Long Form  Complaint* in *In re: Talcum Powder Products Marketing, Sales Practices, and Products  Liability Litigation*.

51.     At all relevant times, the Defendants had a duty exercise reasonable care to consumers, including Plaintiff, in the mining, processing, milling, supplying, researching, developing, manufacturing, marketing, producing, packaging, labeling, testing, promoting, selling and/or distributing of/for the PRODUCTS.

52.     At all pertinent times, Defendants knew or should have known that consumers of the PRODUCTS, including Plaintiff, were using the PRODUCTS to dust their perineum for feminine hygiene purposes; all reasonable and foreseeable uses of the PRODUCTS.

53.     The Johnson and Johnson Defendants breached their duty to Plaintiff and were otherwise negligent in marketing, designing, manufacturing, producing, supplying, inspecting,

12

testing, selling and/or distributing the PRODUCTS in one or more of the following respects:

    a.  In failing to warn Plaintiff of the hazards associated with the use of the PRODUCTS;

    b.  In failing to properly test their products to determine adequacy and effectiveness or safety measures, if any, prior to releasing the PRODUCTS for consumer use;

    c.  In failing to properly test the PRODUCTS to determine the increased risk of ovarian cancer during the normal and/or intended use of the PRODUCTS;

    d.  In failing to inform ultimate users, such as Plaintiff, as to the safe and proper methods of handling and using the PRODUCTS;

    e.  In failing to remove the PRODUCTS from the market when the Defendants knew or should have known the PRODUCTS were defective;

    f.  In failing to instruct the ultimate users, such as Plaintiff, as to the methods for reducing the type of exposure to the PRODUCTS which caused increased risk of ovarian cancer;

    g.  In failing to inform the public in general and the Plaintiff in particular of the known dangers of using the PRODUCTS for dusting the perineum;

    h.  In failing to advise users how to prevent or reduce exposure that caused an increased risk for ovarian cancer;

    i.  In marketing and labeling the PRODUCTS as safe for all uses despite knowledge to the contrary;

    j.  In failing to act like a reasonably prudent company under similar circumstances;

    k.  In failing to use a safer alternative to talc in the PRODUCTS, such as cornstarch.

54.    Each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff.

55.     At all relevant times, the Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use.

56.     As a direct and proximate result of the Defendants' negligence, in one or more of the aforementioned ways, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer. As a direct and proximate result, Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiff prays for judgment against the Defendants in a fair and reasonable sum in excess of $75,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT TWENTY-SEVEN – BREACH OF EXPRESS WARRANTY

57.     Plaintiff incorporates by reference all other paragraphs of this Short Form Complaint and those allegations in *Plaintiffs' Master Long Form  Complaint* in *In re: Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*.

58.     At all relevant times, the Defendants expressly warranted through direct-to-consumer marketing, advertisements, and labels, that the PRODUCTS were safe and effective for reasonably anticipated used by women, including to dust their perineum for feminine hygiene purposes.

59.     The Defendants knew or should have  known that the PRODUCTS were unreasonably dangerous and defective when put to their  reasonably anticipated us.

60.     The labeling and advertisements for the PRODUCTS include, but are not limited to, the following statements: "For you, use every day to help feel soft, fresh, and comfortable;" "A sprinkle a day keeps the odor away;" "Your body perspires in more places than just under

your arms;" "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day;" and "SHOWER to SHOWER can be used all over your body."[15]

61.     In particular, Johnson & Johnson advertised the product SHOWER to SHOWER to be applied "all over," and suggested that women use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

62.     At all relevant times, Plaintiff was deceived by Defendants' intentional misrepresentations and omissions, including by the orchestrated claims made on or in television commercials, advertising materials, websites, and on product labels and packaging regarding the usage and safety of the PRODUCTS.

63.     At all relevant times, Plaintiff acted in reasonable reliance upon the Johnson & Johnsons' unlawful trade practices, and had Johnson & Johnson not engaged in the deceptive conduct described herein, Plaintiff would not have purchased and/or received the PRODUCTS.

64.     At all relevant times, the PRODUCTS did not conform to these express representations because they cause serious injury, including ovarian cancer, when used by women in the perineal area.

65.     As a direct and proximate result of the Defendants' breach of warranty, Plaintiff purchased and used the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer. Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiff prays for judgment against the Defendants in a fair and reasonable sum in excess of $75,000.00, together with costs expended herein and such further

and other relief as the Court deems just and appropriate.

## COUNT TWENTY-EIGHT – BREACH OF IMPLIED WARRANTIES

66.     Plaintiff incorporates by reference all other paragraphs of this Short Form Complaint and those allegations in *Plaintiffs' Master Long Form  Complaint* in *In re: Talcum Powder Products Marketing, Sales Practices, and Products  Liability Litigation*.

67.     At the time the Defendants manufactured, marketed, labeled, promoted, distributed and/or sold the PRODUCTS, the Defendants knew of the uses for  which the PRODUCTS were intended, including use by women in the perineal area. With this  knowledge, they impliedly warranted the PRODUCTS to be of merchantable quality and safe for  such use.

68.     Defendants breached their implied warranties of the PRODUCTS sold to  Plaintiff because they were not fit for their common, ordinary and intended uses, including use  by women in the perineal area.

69.     As a direct and proximate result of the Defendants' breach of  implied warranties, Plaintiff purchased and used the PRODUCTS that directly and proximately  caused each Plaintiff to develop ovarian cancer. As a result, Plaintiff was caused to incur  medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiff prays for judgment against Defendant PTI Union, LLC, and Imerys Talc America, Inc. in a fair and reasonable sum in excess of $75,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT TWENTY-NINE – CIVIL CONSPIRACY

70.     Plaintiff incorporates by reference all other paragraphs of this Short Form Complaint and those allegations in *Plaintiffs' Master Long Form  Complaint* in *In re: Talcum*

*Powder Products Marketing, Sales Practices, and Products Liability Litigation.*

71.     Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Plaintiff' injuries, diseases, and/or illnesses by exposing the Plaintiff to harmful and dangerous PRODUCTS. Defendants further knowingly agreed, contrived, confederated and conspired to deprive the Plaintiff of the opportunity of informed free choice as to whether to use the PRODUCTS or to expose themselves to the stated dangers. Defendants committed the wrongs as described herein by   willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the  use of and exposure to the PRODUCTS.

72.     In furtherance of said conspiracies, Defendants, individually or by and through its agents, representatives, and/or contractors, performed the following overt acts:

a.     For many decades, Defendants, individually, jointly, and in conspiracy with  each other, have been in possession of medical and scientific data, literature  and test reports that clearly indicated that use of their by women resulting  from ordinary and foreseeable use of the PRODUCTS were unreasonably  dangerous, hazardous, deleterious to human health, carcinogenic, and  potentially deadly;

b.     Despite the medical and scientific data, literature, and test reports possessed  by and available to Defendants, Defendants individually, jointly, and in  conspiracy with each other, fraudulently, willfully and maliciously:

i.     Withheld, concealed and suppressed said medical information  regarding the increased risk of ovarian cancer from Plaintiff, as  described above; In addition, on July 27, 2005, Defendants, as part of the TIPTF, corresponded about and agreed to edit and delete portions  of scientific papers being submitted on their behalf to the United States  Toxicology Program in an attempt to prevent talc from being classified  as a carcinogen;

ii.     Instituted a "defense strategy" through the TIPTF to defend talc at all  costs. In furtherance of this defense strategy, Defendants, through the TIPTF, used their influence over the National Toxicology Program  ("NTP') Subcommittee and the threat of litigation against the NTP to  prevent the NTP from classifying talc as a carcinogen on its 10th  Report on Carcinogens ("RoC");

iii.     Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of ovarian cancer which Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, Defendants, through the TIPTF, collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994. In a letter dated September 17, 1997, the Defendants were criticized by their own toxicologist consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

c.     By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce and did induce the Plaintiff to rely upon these false and fraudulent representations, omissions and concealments, and to continue to expose themselves to the dangers inherent in the use of and exposure to the PRODUCTS.

73.     Plaintiff reasonably and in good faith relied upon the fraudulent representations, omissions, and concealments made by Defendants regarding the nature of the PRODUCTS.

74.     As a direct, foreseeable and proximate result of the Defendants' conspiracy, Plaintiff purchased and used the PRODUCTS in the perineal areas, which directly and proximately caused each Plaintiff to develop ovarian cancer. Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severely, in a fair and reasonable sum in excess of $75,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT THIRTY – CONCERT OF ACTION

75.     Plaintiff incorporates by reference all other paragraphs of this Short Form Complaint and those allegations in *Plaintiffs' Master Long Form Complaint* in *In re: Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*.

76.     At all relevant times, the Defendants knew that the PRODUCTS should contain warnings about the risk of ovarian cancer when women used the PRODUCTS to powder the

perineal region, but they purposefully suppressed this information and omitted warnings from the PRODUCTS. They did so to maintain sales and profits of the Defendants.

77.     As a direct, foreseeable and proximate result of the Defendants' actions and failures to act, as alleged throughout this Petition, and incorporated herein, Plaintiff purchased and used the PRODUCTS in their perineal areas. As a direct and proximate result of such use, each Plaintiff developed ovarian cancer, and Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severely, in a fair and reasonable sum in excess of $75,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT THIRTY-ONE– WRONGFUL DEATH

78.     Plaintiff incorporates by reference all other paragraphs of this Short Form Complaint and those allegations in *Plaintiffs' Master Long Form  Complaint* in *In re: Talcum Powder  Products  Marketing,  Sales  Practices,  and  Products  Liability Litigation*.

79.     As a direct and proximate result of the acts and/or omissions of Defendants as set forth herein, the Decedent named in this action used the PRODUCTS in their perineal areas. Subsequent to such use, Decedent developed ovarian cancer, suffered substantial pain and suffering, both physical and emotional in nature, and subsequently died.

80.     Plaintiff, on behalf of themselves and all of the next of kin of Decedents, are entitled to recover damages as Decedents would have if they were living, as a result of acts  and/or omissions of Defendants.

81.     Plaintiff, on behalf of themselves and all of Decedents' next of kin are also entitled to recover punitive damages and damages for substantial pain and suffering caused to  Decedents

from the acts and/or omissions of Defendants as fully set forth herein, including  without limitations, punitive damages.

82.     As a direct and proximate result of Defendants' conduct, Plaintiff and Decedent have been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, and economic damages.

WHEREFORE, Plaintiff demands judgment against Defendants, individually, jointly, severally, and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT THIRTY-TWO – PUNITIVE DAMAGES

83.     Plaintiff incorporates by reference all other paragraphs of this Short Form Complaint and those allegations in *Plaintiffs' Master Long Form  Complaint* in *In re: Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*.

84.     The Defendants have acted willfully, wantonly, maliciously, with an evil motive, and recklessly in one or more of the following ways:

a.   Defendants knew of the unreasonably high risk of ovarian cancer posed by the  PRODUCTS before manufacturing, marketing, distributing and/or selling the  PRODUCTS, yet purposefully proceeded with such action;

b.   Despite their knowledge of the high risk of ovarian cancer associated with the  PRODUCTS, Defendants affirmatively minimized this risk through marketing  and promotional efforts and product labeling;

c.   Through the actions outlined above, Defendants expressed a reckless indifference to the safety of users of the PRODUCTS, including Plaintiff.

20

Defendants knew of the dangers and risks of the PRODUCTS, yet they concealed and/or omitted this information from labels and warnings contained  on the PRODUCTS in furtherance of their conspiracy and concerted action.  These actions were outrageous because of Defendants' evil motive or a  reckless indifference to the safety of users of the PRODUCTS.

85. As a direct and proximate result of the willful, wanton, malicious, evilly motivated and/or reckless conduct of the Defendants, the Plaintiff have sustained damages as set  forth above.

WHEREFORE, Plaintiff prays for a judgment for punitive damages against all Defendants, jointly and severally, in a fair and reasonable amount sufficient to punish Defendants and deter them and others from engaging in similar conduct in the future, costs expended herein, and such further and other relief as the Court deems just and appropriate.

## <u>COUNT THIRTY-THREE – DAMAGES</u>

86.     Plaintiff incorporates by reference all other paragraphs of this Short Form Complaint and those allegations in *Plaintiffs' Master Long Form  Complaint* in *In re: Talcum Powder  Products  Marketing,  Sales  Practices,  and  Products  Liability Litigation*.

87.     Defendants knew of the dangerous condition of the PRODUCTS, including that they posed a danger to their consumers, including Plaintiff, but chose not to include any warnings or information regarding the dangerous condition of the PRODUCTS.

88.     Defendants showed complete indifference to or conscious disregard of the safety of Plaintiff by their conduct described herein. Defendants knew or should have known failure to include a warning for the PRODUCTS would result in women using the PRODUCTS in their perineal areas and subsequently developing ovarian cancer.

89.     Plaintiff are entitled to exemplary damages to punish Defendants and to deter Defendants and others in similar situations from like conduct.

WHEREFORE, Plaintiff prays for judgment against Defendants for exemplary damages for the aggravating circumstances of decedents' deaths, to punish Defendants, and to deter Defendants and others from like conduct, and  such other and further relief as this Court deems just, proper, and equitable.

## TOLLING STATUTE OF LIMITATIONS

90.     Plaintiff incorporates by reference all other paragraphs of this Short Form Complaint and those allegations in *Plaintiffs' Master Long Form  Complaint* in *In re: Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*.

91.     Plaintiff have suffered an illness that has a latency period and does not arise until many years after exposure. Plaintiff' illnesses did not distinctly manifest themselves until they were made aware that their ovarian cancer could be caused by their use of the Defendants' PRODUCTS. Consequently, the discovery rule applies to these cases, and the statute of limitations  has been tolled until the day that Plaintiff knew or had reason to know that their ovarian cancer  was linked to their use of the Defendants' PRODUCTS.

92.     Furthermore, the running of any statute of limitations has been equitably tolled by  reason of Defendants' fraudulent concealment and conduct. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiff the true risks associated with PRODUCTS.

93.     As a result of Defendants' actions, Plaintiff was unaware, and could not reasonably know or have learned through reasonable diligence, that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of  Defendants'

acts and omissions.

94.     Furthermore, Defendants are estopped from relying on any statute of limitations because of their concealment of the truth regarding the safety of PRODUCTS. Defendants were under a duty to disclose the true character, quality and nature of PRODUCTS because this was non-public information over which they continue to have exclusive control. Defendants knew that this information was not available to Plaintiff, their medical providers and/or their health facilities, yet they failed to disclose the information to the public.

95.     Defendants had the ability to and did spend enormous amounts of money in furtherance of their purposes of marketing and promoting a profitable product, notwithstanding the known or reasonably knowable risks. Plaintiff and medical professionals could not have afforded to and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and they were forced to rely on Defendants' representations.

## JURY DEMAND

Plaintiff(s) hereby demand a trial by jury as to all claims in this action.

Respectfully Submitted by,

ONDERLAW, LLC

By:     /s/ Stephanie Rados
        James G. Onder, #38049
        William W. Blair, #58196
        Stephanie L. Rados, #65117
        110 E. Lockwood, 2nd Floor
        St. Louis, MO  63119
        314-963-9000 telephone
        314-963-1700 facsimile
        onder@onderlaw.com
        blair@onderlaw.com
        rados@onderlaw.com

**Counsel for Plaintiff(s)**